James Regan
Mario Aieta
Daniel G. Gurfein
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, NY  10169-0079
(212) 818-9200
*Attorneys for Defendants*
*Merrick Bank Corp. and CardWorks, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

CREDIT CARD PROCESSING USA, INC. d/b/a           :
MSI MERCHANT SERVICES, INC.                       :
                                                  :                10-cv-7464 (LBS)
                                                  :
                      Plaintiff,                  :
                                                  :
         -against-                                :
                                                  :
MERRICK BANK CORPORATION and                      :
CARDWORKS, INC.                                   :
                                                  :
                      Defendant.                  :

-------------------------------------------------------------- x


### DEFENDANTS' MEMORANDUM OF LAW
### IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................1

RELEVANT FACTS .....................................................................................................2

    A.    The Merrick – MSI ISO Agreement .............................................................2

    B.    MSI's Additional Claims ..............................................................................4

ARGUMENT .................................................................................................................7

    I.    STANDARD OF REVIEW ...........................................................................7

    II.    MSI's NEGLIGENCE CLAIM IS BARRED
              BY THE STATUTE OF LIMITATIONS.................................................7

    III.    MSI'S CONVERSION CLAIM IS BARRED
              BY THE STATUE OF LIMITATIONS ..................................................9

    IV.    MSI'S CLAIM THAT MERRICK BREACHED THE PURPORTED
              AMENDMENT REGARDING THE RESERVE ACCOUNT CAP
              MUST BE DIMISSED BASED ON THE ISO AGREEMENT
              INTEGRATION CLAUSE ......................................................................10

    V.    MSI FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE ...........11

             A.    MSI Has Not Alleged Interference with a Third Party .............................11

             B.    MSI Has Not and Cannot Allege the Requisite Malice ............................12

             C.    The Complaint Sets Forth No Basis for Its Claim
                  Against Merrick's Corporate Parent .......................................................14

CONCLUSION.............................................................................................................16

**TABLE OF AUTHORITIES**

Page(s)

CASES

*150 E. 58th St. Partners, L.P. v. Wilkhahn Wilkening & Hahn GmbH & Co.*,
  1998 WL 65992 (S.D.N.Y. Feb. 17, 1998)...............................................................20

*4 Hour Wireless v. Smith*,
  2002 WL 31654963 (S.D.N.Y. Nov. 22, 2002).......................................................20

*Achtman v. Kirby, McInerney & Squire LLP*,
  464 F.3d 328 (2d Cir. 2006)....................................................................................12

*Advent Sys. Ltd. v. Unisys Corp.*,
  925 F.2d 670 (3d Cir. 1991)....................................................................................20

*Apollo Technologies Corp. v. Centrosphere Indus. Corp.*,
  805 F. Supp. 1157 (D.N.J. 1992) ............................................................................18

*Bell Atl. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955 (2007)..............................................................12, 20

*Boulevard Assocs. v. Sovereign Hotels, Inc.*,
  72 F.3d 1029 (2d Cir. 1995)....................................................................................20

*Boykin v. KeyCorp*,
  521 F.3d 202 (2d Cir. 2008)....................................................................................12

*Broughel v. Battery Conservancy*,
  2009 WL 928280 (S.D.N.Y. Mar. 30, 2009) ..........................................................17

*Burch v. Pioneer Credit Recovery, Inc.*,
  551 F.3d 122 (2d Cir. 2009)....................................................................................12

*Carmona v. Spanish Broad. Sys., Inc.*,
  No. 08 Civ. 4475, 2009 WL 890054 (S.D.N.Y. Mar. 30, 2009) .............................12

*Carvel Corp. v. Noonan*,
  3 N.Y.3d 182, 818 N.E.2d 1100 (2004).......................................................16, 17, 18

*Fed. Ins. Co. v. Distinguished Properties Umbrella Managers Inc.*,
  2010 WL 2605050 (S.D.N.Y. June 28, 2010) .........................................................13

*Feld v. Feld*,
  279 A.D.2d 393, 720 N.Y.S.2d 35 (1st Dept. 2001).........................................14, 15

*Foxtons, Inc. v. Cirri Germain Realty*,
  No. L-1421-06 2008 WL 465653 (N.J. App. Div. Feb. 22, 2008) ..........................19

*Gerena v. Korb,*
   617 F.3d 197 (2d Cir. 2010)............................................................................13

*Iqbal v. Hasty,*
   490 F.3d 143 (2d Cir. 2007)............................................................................12

*Lamorte Bums & Co., Inc. v. Walters,*
   167 N.J. 285 (2001) ......................................................................................17

*Mandel v. UBS/PaineWebber, Inc.,*
   373 N.J. Super. 55, 860 A.2d 945 (App. Div. 2004) .............................................16

*Meadow Ridge Capital, LLC v. Levi*,
   29 Misc. 3d 1224(A) (N.Y. Sup. Ct. 2010)........................................................18

*MediaNews Group, Inc. v. McCarthey,*
   432 F. Supp. 2d 1213 (D. Utah 2006),
   *aff'd,* 494 F.3d 1254 (10th Cir. 2007)...............................................................16

*MMC Energy, Inc. v. Miller,*
   2009 WL 2981914 (S.D.N.Y. Sept. 14, 2009)....................................................18

*Perry v. McMains,*
   2010 WL 3034421 (S.D.N.Y. July 27, 2010) ....................................................13

*Rochester Gas & Elec. Corp.*,
   355 F. App'x 547 (2d Cir.2009) .....................................................................21

*Rainbow Apparel, Inc. v. KCC Trading, Inc.*,
   9CV05319DMCMF, 2010 WL 2179146 (D.N.J. May 26, 2010)............................16

*Romano v. MTI/The Image Group, Inc.*,
   2003 WL 22203735 (S.D.N.Y. Sept. 22, 2003).................................................20

*Rotenberg v. Town of Mamaroneck,*
   2010 WL 3468051 (S.D.N.Y. Aug. 24, 2010) ...................................................18

*State v. Seventh Regiment Fund, Inc.*,
   98 N.Y.2d 249, 774 N.E.2d 702 (2002).............................................................14

*Wardley Corp. v. Meredith Corp.*,
   93 F. App'x. 183 (10th Cir. 2004) ...................................................................16

*Wexco Indus. v. ADM21 Co., Ltd.*,
   2008 WL 5427867 (D.N.J. Dec. 30, 2008).........................................................18

iii

**STATUTES AND RULES**

CPLR § 214...................................................................................................................................12, 14

Fed. R. Civ. P. 12(b)(6)................................................................................................................12

N.J. Stat. Ann. § 2A:14-2.............................................................................................................13

1042678_2

Defendants Merrick Bank Corporation ("Merrick") and CardWorks, Inc. ("CardWorks") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Second, Third, Fifth, and Seventh Claims for Relief set forth in the complaint (the "Complaint") of plaintiff Credit Card Processing USA, Inc. d/b/a MSI Merchant Services, Inc. ("Plaintiff" or "MSI").

## PRELIMINARY STATEMENT

The present action is, at its core, a simple contract dispute, one which goes back to 2005, when Merrick advised MSI that Merrick was exercising its contractual right to allocate certain losses to MSI from funds that Merrick was contractually entitled to hold in reserve. Merrick continues to hold those funds; MSI contends that Merrick is not entitled to do so under the relevant contract.  MSI has now sued Merrick to recover those funds claiming a breach of contract.  But MSI also asserts a series of additional ill-conceived claims which, based on its own allegations, are either clearly time barred or otherwise patently deficient as a matter of law.

First, MSI attempts to stretch this contractual dispute into a tort action, asserting claims for negligence and conversion.  But the Complaint makes clear that the facts underlying the present claims all relate to events that occurred – and which were fully known to MSI – in 2005.  Under the applicable three year statute of limitations, these claims are clearly time barred.

MSI also asserts a claim for tortious interference with prospective economic advantage based on Merrick's purported refusal to let MSI out of its contractual obligations prior to the end of the contract term, unless MSI accepted responsibility for the losses Merrick maintained MSI was contractually obligated to bear.  This claim fails because the "tortious" conduct alleged amounts to nothing more than a purported breach by Merrick of it contractual obligations, and of course, a party cannot tortiously interfere with its own contract.  Moreover, as the Complaint plainly states, Merrick's actions had a justifiable economic basis which precludes MSI from establishing the necessary "malice" required to maintain a tortious interference claim.

It appears the true motivation for inclusion of this specious claim is to drag Merrick's corporate parent into this dispute, as MSI alleges tortious interference by both Merrick

and its corporate parent, CardWorks.  But MSI does not, because it cannot, allege any tortious conduct by CardWorks.  In fact, MSI only alleges than that Merrick consulted with CardWorks, its corporate parent, regarding the losses Merrick demanded MSI accept.  This weak and conclusory allegation simply does not state a cause of action for an independent intentional tort by CardWorks.

Finally, MSI attempts to include an additional breach of contract claim based on a purported contractual "modification" that is not part of the actual governing agreement between the parties.  The actual agreement, which MSI attaches to the Complaint, says nothing about this modification, but does include an integration clause, precluding MSI from claiming that additional extra-contractual arrangements existed.

Thus, MSI's Second, Third, Fifth and Seventh Claims for Relief must be dismissed.

## RELEVANT FACTS

### A.      The Merrick – MSI ISO Agreement

Merrick is a member bank of the Visa and MasterCard associations (the "Associations") and functions as an "acquiring bank" for Visa and MasterCard transactions. Compl. ¶ 15-16.  As an acquiring bank, Merrick acts as the merchant's bank in the card transaction process – paying the merchant and facilitating the transaction with the credit card issuing bank . Compl. ¶ 15.

MSI recruits and provides services to merchants on behalf of acquiring banks, and pursuant to an Independent Sales Organization Agreement, MSI agreed to provide such services to Merrick.  Compl. ¶¶ 4, 26.[1]  MSI originally entered into an agreement with Provident Bank on

---

[1]  As more fully detailed in the Complaint, "[t]he role of an ISO such as MSI is to recruit and enroll qualified merchants into an acquiring bank's merchant program. The ISO assists the merchant in completing required documentation, provides the merchant with equipment and services, trains the merchant on the rules and procedures for joining the merchant program and handles the day-to-day management of the merchant program for the acquiring bank. The acquiring bank charges each merchant a fee for its services and the ISO is compensated by receiving a portion of that fee. As a result, the acquiring bank typically has total control over the ISO's cash flow." Compl. ¶ 27.

2

April 30, 2001. Compl.  ¶ 26 & Ex. A (the "Provident ISO Agreement").  This agreement was subsequently assigned to Merrick and amended, pursuant to a September 13, 2004, Consent to Assignment of Amendment to Independent Sales Organization Agreement.  Compl. ¶ 26 & Ex. A (the "Merrick Assignment and Amendment") (the Provident ISO Agreement and the Merrick Assignment and Amendment collectively constitute the "ISO Agreement").

Under the ISO Agreement, MSI was required to establish and maintain a "Reserve Account" at Merrick which Merrick controlled and which contained funds set aside by Merrick from the fees otherwise due to MSI for the services it provided. Compl. ¶39.  The purpose of the Reserve Account was to protect Merrick against losses attributable to the merchants recruited by MSI. Compl. ¶ 40.  The Complaint alleges that Merrick improperly withheld funds in the Reserve Account for losses that were not in fact "Merchant Losses" as defined in the ISO Agreement.  Compl. ¶¶ 45-65.

Specifically, MSI contests Merrick's right to withhold as "Merchant Losses" any losses Merrick sustained as a result of "a massive security breach at a credit card processing company called CardSystems Solutions, Inc. ("CSSI")." Compl. ¶ 2.  CSSI processed card transactions for MSI's merchants. Compl. ¶ 4.  As a result of the CSSI security breach that occurred in 2005, Merrick was held responsible to Visa and MasterCard for over $10 million in damages incurred by the banks that had issued the cards compromised by the breach. Compl. ¶ 21.  Under the ISO Agreement, Merrick contends that as between Merrick and MSI, MSI is responsible for the losses from the CSSI security breach.  Thus, while MSI has asserted numerous claims sounding in both contract and tort, the gravamen of this action is a dispute over the proper allocation of losses based on two conflicting readings of relevant provisions of the ISO Agreement.

Significantly, the CSSI security breach was discovered in June 2005.  Compl. ¶ 2. Merrick advised MSI in no uncertain terms in September 2005 that it intended to increase MSI's Reserve Account to cover all of Merrick's "estimated obligations, including its indemnification and fraud-related obligations relating to the security breach at CSSI." Compl. ¶ 61.  And MSI, by

3

letter from its counsel dated October 3, 2005, "explained in excruciating detail why the Reserve Account could not be increased nor debited by Merrick for anything whatsoever to do with the Data Breach." Compl. ¶ 65.   Nonetheless, Merrick in fact immediately began to increase the Reserve Account from $500,000 to $2,505,971.68. Compl. ¶ 62.

MSI contends that it thereafter sought to get out of the ISO Agreement and move its merchants to another acquiring bank, First National Bank of Omaha ("FNBO"). Compl. ¶ 71. MSI alleges that Merrick attempted to interfere with this transfer by requiring MSI to pay what Merrick believed to be MSI's full share of the losses resulting from the CSSI security breach. Compl. ¶ 71. Eventually, with the cooperation and assistance of Merrick, MSI did in fact move its merchants to FNBO pursuant to a Merchant Portfolio Assignment, Assumption and Transition Services Agreement (the "TSA"). Compl. ¶ 77 & Ex. B.

**B.** **MSI's Additional Claims**

In addition to its contract and quasi-contract claims relating to the ISO Agreement – which are also meritless although not part of the present motion – MSI presently asserts several clearly frivolous claims that necessarily fail as a matter of law.

**Second Claim for Relief – Negligence**.  MSI alleges Merrick negligently supervised CSSI in failing to ensure it complied with Association security rules. Compl. ¶ 91.  In so doing, Merrick purportedly breached a duty of care to MSI, and MSI purportedly suffered direct and foreseeable consequences as a result of Merrick's negligence. Compl. ¶¶ 93-94. However, the CSSI security breach occurred in June 2005.  Thus, MSI's claim against Merrick for its alleged negligence relating to the CSSI security breach accrued over five years ago, well beyond the applicable statute of limitations.

**Third Claim for Relief – Breach of Contract**.  MSI asserts two breach of contract claims, one of which is based on a phantom contract modification between MSI and Provident.  In its Third Claim for Relief MSI asserts that while the ISO agreement contained a formula according to which the amount of money required to be maintained in the Reserve Account would be calculated, Compl. ¶ 99, in 2002, "MSI and Provident modified the ISO

4

Agreement to permanently set the Reserve Amount at $500,000," Compl. ¶ 100.  Provident allegedly "waived application of this formula and instead agreed with MSI to set and maintain the Reserve Amount at $500,000." Compl. ¶ 55.  Thereafter, Merrick purportedly "breached the amended ISO Agreement by unilaterally insisting on application of the Reserve Amount formula contained in the original ISO Agreement."  Incredibly, the purported "amendment" or "waiver" to the ISO Agreement capping the Reserve Account at $500,000 is NOT part of the ISO Agreement that MSI attached to its Complaint.  The operative ISO Agreement states in Section 10.3 that "This Agreement . . .  sets forth the entire understanding of the parties relating to its subject matter, and all other understandings, written or oral, are superseded.  Except as otherwise provided in this Agreement, this Agreement may not be amended except in writing executed by both parties."  Compl. Ex. A, Provident ISO Agreement at p. 10.

While MSI is careful in the Complaint not to specify whether this purported "amendment" was ever reduced to writing or was simply an oral amendment, it is not reflected in either the Provident ISO Agreement or the Merrick Assignment and Amendment, the only two "writings executed by both parties" that collectively constitute the ISO Agreement.  Because the alleged amendment is not executed by both parties, it is not an obligation that MSI can enforce against Merrick.

**Fifth Claim for Relief – Conversion**.  MSI contends that Merrick's retention of funds in the Reserve Account for losses related to the CSSI security breach exceeded its rights and constituted an unlawful conversion.  Compl. ¶¶ 117-118.  Under the ISO Agreement, 180 days after the final transaction processed by Merrick, Merrick was required to turn over all funds in the Reserve Account.  Compl. ¶ 75.  MSI contends that Merrick's unlawful conversion occurred December 30, 2008, when Merrick was otherwise required to turn over the Reserve Account but advised MSI that it was applying the Reserve Account to partially satisfy MSI's obligations under the ISO Agreement to repay Merrick for losses related to the CSSI security breach.  Compl. ¶ 80.  However, MSI was expressly advised and expressly objected in **2005** to Merrick's retention of funds in the Reserve Account to satisfy losses relating to the Security

5

Breach.  Thus, MSI's conversion claim accrued in 2005, well beyond the applicable statute of limitations.

**Seventh Claim for Relief – Tortious Interference with Prospective Economic Relations.**  In addition to purportedly improperly holding funds in the Reserve Account, MSI alleges that Merrick, as well as Merrick's parent corporation CardWorks, tortiously interfered with MSI's attempt to move its acquiring bank relationship to FNBO.  MSI alleges that in January 2007 it notified Merrick that it intended to terminate the ISO Agreement and transfer its merchants to FNBO. MSI contends that Merrick was obligated to facilitate the transfer to FNBO in January 2007, despite the fact that the express term of the ISO Agreement ran through December 31, 2007. Compl. Ex. A, Merrick Assignment and Amendment at p. 2.  MSI also alleges that Merrick refused to facilitate the trsansfer of MSI's merchants to FNBO in January 2007 unless MSI accepted $7.2 million as its share of the CSSI security breach losses.  Compl. ¶ 71.  MSI acknowledges in the Complaint that the ISO Agreement terminated, pursuant to its terms, on December 31, 2007, and that Merrick did subsequently assist MSI in transferring its merchants to FNBO. Compl. ¶¶ 73-77.  Thus, the purported tortious conduct alleged is that Merrick would not agree to an early termination of the contract – which it was not required to do and which was not necessarily in its best interest – unless MSI agreed to acknowledge its responsibility for the funds in dispute.

MSI alleges that CardWorks was a party to the purported "plot" to interfere with its transfer to FNBO.  Compl. ¶ 130.  The allegations that support MSI's attempts to pull CardWorks into this litigation are contained in a single paragraph of the Complaint which alleges : "Upon information and belief, Horn was acting at the direction of the leadership not only of Merrick but defendant CardWorks, including its CEO Donald Berman. Notably in an e-mail dated January 26, 2007, from Horn to MSI executive George Mayo in New Jersey, Horn stated that discussions concerning MSI's response to the $7.2 million extortionate demand would have to be reviewed with his "5 chiefs" which, upon information and belief, included Berman."

Compl. ¶ 72.  Based upon this lone fact, MSI contends that CardWorks as well as Merrick

tortiously interfered with MSI's prospective economic advantage.

## ARGUMENT

### I.     STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6), the court must determine whether the

plaintiff has pleaded "'enough facts to state a claim to relief that is plausible on its face.'"

*Carmona v. Spanish Broad. Sys., Inc.*, No. 08 Civ. 4475, 2009 WL 890054, at *2 (S.D.N.Y. Mar.

30, 2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).

While "a court must accept as true the facts alleged in the complaint and draw all reasonable

inferences in favor of the nonmoving party," id., "'[c]onclusory allegations or legal conclusions

masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss,'" *id.*

(quoting *Achtman v. Kirby, McInerney & Squire LLP*, 464 F.3d 328, 337 (2d Cir. 2006)); *see*

*Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2009) ("[A] plaintiff's

pleading obligation still 'requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555).  "A court

must apply a 'flexible "plausibility standard," which obliges a pleader to amplify a claim with

some factual allegations in those contexts where such amplification is needed to render the claim

plausible.'" *Carmona*, at *2. (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)).

"While the plausibility standard does 'not require heightened fact pleading of specifics,' it does

require 'factual allegations sufficient "to raise a right to relief above the speculative level.'" *Id.*

(quoting *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008) (quoting *Twombly*, 550 U.S. at

555)).

### II.    MSI's NEGLIGENCE CLAIM IS BARRED
###        BY THE STATUTE OF LIMITATIONS

Under New York law, the applicable statute of limitations for negligence is three

years. N.Y. CPLR § 214.  While Plaintiff pleads that "its losses were incurred in New Jersey, the

only state in which it maintains a place of business," Compl. ¶ 95, New Jersey law is of no help. First, the applicable statute of limitations for negligence is two years in New Jersey. N.J. Stat. Ann. § 2A:14-2. But this Court must apply New York's statute of limitations regardless. "New York still adheres to the traditional substantive/procedural dichotomy in its choice of law analysis and generally classifies statutes of limitations as procedural, except for those limitations periods which it designates as statutes of repose." *Gerena v. Korb*, 617 F.3d 197, 206 (2d Cir. 2010). As a federal court in New York exercising diversity jurisdiction, "this Court must apply the New York choice-of-law rules and statutes of limitations. New York courts generally apply New York's statutes of limitations, even when the injury giving rise to the action occurred outside New York." *See Perry v. McMains*, 2010 WL 3034421, *2 (S.D.N.Y. July 27, 2010) (internal citations omitted).

Because the relevant facts underlying MSI's negligence claim were fully know to MSI in 2005, under New York's three year statute of limitations, MSI's negligence claim is clearly time barred. As a general rule, "a tort claim accrues as soon as the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint. Thus, to determine timeliness, a court considers whether plaintiff's complaint must, as a matter of law, be read to allege damages suffered so early as to render the claim time-barred." *Fed. Ins. Co. v. Distinguished Properties Umbrella Managers Inc.*, 2010 WL 2605050, *3 (S.D.N.Y. June 28, 2010).

Here, MSI claims Merrick was negligent in failing, as CSSI's purported sponsor, "to ensure that CSSI abided by the explicit security protocols of the Associations," Compl. ¶ 91, and that "the losses suffered by MSI were a direct and foreseeable consequence of Merrick's negligence," Compl. ¶ 94. As the Complaint makes explicit, all of the elements of MSI's claim were clearly known to MSI in 2005. On June 17, 2005, MasterCard disclosed that there had been a major breach at CSSI and that subsequent investigation concluded that the security breach was caused by CSSI's failure to comply with industry security rules and regulations. Compl. ¶ 19. In July 2005, there were congressional hearings on the security breach where both CSSI and

8

Merrick representatives testified, including testimony from CSSI that "*Merrick was CSSI's sponsoring bank*." Compl. ¶ 20 (emphasis in original).  With respect to CSSI's purported damages allegedly resulting from Merrick's negligence, in the "summer and fall of 2005," MSI was purportedly compelled to devote all its resources and hire temporary employees to deal with the fallout from the data breach, purportedly resulting in over $1 million in administrative expenses, Compl. ¶ 29; as a "direct result" of the security breach and the subsequent transition process (in 2005) resulting from CSSI's termination as a processor, MSI purportedly lost several thousand merchants, Compl. ¶ 30; and "for a period of several months after" the security breach, MSI was unable to grow its network, resulting in additional purported damages, Compl. ¶ 31.

Consequently, as all of the elements of its claims were known and could have been alleged in a complaint in 2005, MSI's Second Claim for Relief, sounding in negligence, must be dismissed as time barred.

## III.    MSI'S CONVERSION CLAIM IS BARRED BY THE STATUE OF LIMITATIONS

As with Plaintiff's negligence claim, New York's statute of limitations governs, which for conversion claims is again three years. N.Y. CPLR § 214.   Conversion is the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights," and a "cause of action for conversion accrues when all of the facts necessary to sustain the cause of action have occurred, so that a party could obtain relief in court." *State v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249, 259, 774 N.E.2d 702, 710 (2002).  Generally, a conversion claim accrues upon a demand for property and a refusal to turn it over.  *Feld v. Feld*, 279 A.D.2d 393, 394-95, 720 N.Y.S.2d 35, 37 (1st Dept. 2001).

Here, Plaintiff alleges that Merrick's conversion of funds held in the Reserve Account did not occur until December 2008 when Merrick officially applied the funds in the Reserve Account to satisfy MSI's obligations to repay Merrick for losses relating to the CSSI breach. *See* Compl. ¶ 80.  But Merrick advised MSI **in 2005** that it was increasing the funds in

the Reserve Account to cover losses relating to the security breach.  Compl. ¶¶ 61-62.  MSI at

that time, through its counsel, explained to Merrick in "excruciating detail" that Merrick was not

authorized to do so.  Compl. ¶ 65.  MSI acknowledges that "by diverting MSI's funds into an

account over which MSI had no control, Merrick forced MSI to absorb additional losses . . ."

Compl. ¶ 66.

Thus, in the fall of 2005, MSI clearly demanded that Merrick not hold its funds

for purposes of satisfying losses related to the CSSI security breach, and Merrick both conveyed

its intent to nonetheless withhold MSI's funds for this purpose and actually began to withhold

MSI's funds.  Compl. ¶ 62.[2]  Thus, MSI's conversion claim plainly accrued in 2005, *see Feld*,

279 A.D.2d at 394-395, and is therefore time barred under New York's three year statute of

limitations.

## IV.   MSI'S CLAIM THAT MERRICK BREACHED THE PURPORTED AMENDMENT REGARDING THE RESERVE ACCOUNT CAP MUST BE DIMISSED BASED ON THE ISO AGREEMENT INTEGRATION CLAUSE

MSI's Third Claim for Relief is based on the purported "modification" to the

Provident ISO Agreement pursuant to which Provident allegedly agreed to cap the Reserve

Account at $500,000. Compl. ¶ 100.  But this modification is not reflected in any identified

written amendment to the Provident ISO Agreement, nor reflected in the Merrick Assignment

and Amendment, which together constitute the entirety of the ISO Agreement.  Significantly,

however, the ISO Agreement contains an integration clause that expressly states: "This

Agreement . . .  sets forth the entire understanding of the parties relating to its subject matter, and

all other understandings, written or oral, are superseded.  Except as otherwise provided in this

---

[2] Notably, the ripeness of MSI's claims more than three years before the filing of this Complaint is further confirmed by the June 2007 TSA, which includes an Exhibit entitled "Litigation and Claims," pursuant to which MSI confirmed that it denied any responsibility for losses due to the security breach and "has threatened litigation." Compl. Ex. B, p. 21.  Clearly, its cause of action accrued if MSI was already threatening litigation.  Notably, MSI also includes some additional purported schedules to the TSA, including a document titled Schedule G, which in colorful language, sets forth its dispute against Merrick.  This "schedule" was not part of the TSA, not referenced in the TSA and should be struck from Ex. B to the Complaint.

Agreement, this Agreement may not be amended except in writing executed by both parties." Compl. Ex. A, Provident ISO Agreement at p. 10.

The ISO Agreement is governed by Utah law.  Compl. Ex. A, Merrick Assignment and Amendment at p. 2.  Under Utah law, integration clauses are "routinely enforced to prevent a party from claiming that an agreement outside the contract changes, supersedes or adds to the terms of the written contract itself." *MediaNews Group, Inc. v. McCarthey*, 432 F. Supp. 2d 1213, 1227 (D. Utah 2006), *aff'd*, 494 F.3d 1254 (10th Cir. 2007) (internal citations omitted); *see also Wardley Corp. v. Meredith Corp.*, 93 F. App'x. 183, 185 (10th Cir. 2004) (integration clause precludes "any claim of breach based on extra-contractual representations").  As MSI has alleged a contractual amendment inconsistent with the express integration clause of the ISO Agreement, its claim asserting a breach of this purported contract "amendment" must be dismissed.

## V.    MSI FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE

### A.    MSI Has Not Alleged Interference with a Third Party

The essence of a tortious interference claim is that the defendant has somehow interfered with plaintiff's relationship with a third-party.  However, a tortious interference claim does not lie where defendant's purported tortious conduct was directed at the plaintiff.  *See Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192, 818 N.E.2d 1100 (2004) ("While economic pressure brought to bear by one contracting party on the other may, on rare occasions, be tortious, it cannot constitute the tort of interference with economic relations" ) (internal citations omitted); *Mandel v. UBS/PaineWebber, Inc.*, 373 N.J. Super. 55, 80-81, 860 A.2d 945, 960 (App. Div. 2004) ("One cannot interfere with one's own economic relationship, since in such an instance the matter is governed by principles of contract law") (internal citations omitted).[3]

---

[3]   While Plaintiff alleges that "defendants' conduct was directed at MSI in New Jersey and MSI suffered damages in New Jersey," Compl. ¶ 132, the Merrick personnel purportedly responsible for the alleged interference are located in New York and as the Complaint notes, CardWorks in also in New York; thus it is defendants' position that New York law governs MSI's tortious interference claim.  However, as New York and New Jersey law are in accord on tortious interference, *see Rainbow Apparel, Inc. v. KCC Trading, Inc.*, 9CV05319DMCMF, 2010 WL 2179146 (D.N.J. May 26, 2010), a choice of law determination is unnecessary.

11

Thus, a plaintiff must allege some conduct by defendants directed towards a third party. *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192, 818 N.E.2d 1100 (2004) ("As federal courts applying New York law have recognized, conduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship."); *see also Lamorte Bums & Co., Inc. v. Walters,* 167 N.J. 285, 306 (2001) (holding defendants liable for tortious interference when the defendants, competitors of the plaintiff, secretly appropriated proprietary information to solicit the plaintiffs customers).

Here, MSI does not allege any conduct whatsoever by Merrick or CardWorks directed at FNBO, let alone conduct engaged in with the sole purpose of interfering with MSI's prospective relationship. Instead, what MSI alleges is that Merrick and CardWorks "interfered" with MSI's third party relationships by failing to cooperate *with MSI* on its purported wish to terminate early the ISO Agreement. Compl. ¶¶ 128-130. Merrick's alleged conduct had nothing to do with FNBO. As per MSI's allegations, the conduct purportedly supporting its tortious interference claim solely relates to Merrick's allegedly unjustified refusal to let MSI out of its contract with Merrick prior to the expiration of its term. Indeed, MSI emphasizes that Merrick's conduct was a violation of the ISO Agreement. Compl. ¶¶ 128-130.

MSI does not allege any actual interference with FNBO because it cannot. In fact, as the Complaint acknowledges, after Merrick terminated the ISO Agreement in accordance with its terms, Compl. ¶ 131, Merrick entered into the TSA with MSI and FNBO, facilitating MSI's transfer of its merchants to FNBO, Compl. ¶ 77 & Ex. B. Because the Complaint, on its face, alleges nothing more than Merrick's interference with its own contract with MSI, the tortious interference claim must be dismissed.

### B.   MSI Has Not and Cannot Allege the Requisite Malice

Additionally, a necessary element of a claim for tortious interference with prospective economic advantage is a specific allegation that the defendants acted with malice. *See Broughel v. Battery Conservancy*, 2009 WL 928280, * 9 (S.D.N.Y. Mar. 30, 2009)

12

("Plaintiff may not rely on conclusory allegations that defendants acted with malice. She must allege, with specificity, that defendants engaged in wrongful means") (internal citations omitted); *Wexco Indus. v. ADM21 Co., Ltd.*, 2008 WL 5427867, at *8 (D.N.J. Dec. 30, 2008) ("Plaintiff must prove that Shell interfered with malice - meaning that it acted intentionally without justification or excuse.")  To adequately allege malice, MSI must show that Defendants conduct amounted to a crime or independent tort, or that Defendants acted for the "sole" purpose of inflicting intentional harm on plaintiff. *Carvel Corp.*, 818 N.E.2d at 1103; *Apollo Technologies Corp. v. Centrosphere Indus. Corp.*, 805 F. Supp. 1157, 1205 (D.N.J. 1992) ("[I]f the defendant's conduct is intended, at least in part, to advance its own competing interests, a tortious interference claim will fail unless the means employed include criminal or wrongful conduct.").

Here, all that is alleged is that Merrick refused to let MSI out of the ISO Agreement prior to its expiration unless MSI agreed to accept the disputed liability arising from the CSSI security breach. *See* Compl. ¶ 71.  The Complaint makes clear Merrick's motivation was its own economic interests, nothing more.  MSI cannot possibly contend that Merrick's "sole" motivation was to interfere with its relationship with FNBO, when the Complaint explicitly alleges Merrick's motivation was to require MSI to cover the CSSI losses.  *See MMC Energy, Inc. v. Miller*, 2009 WL 2981914, *8 (S.D.N.Y. Sept. 14, 2009) ("although Plaintiff alleges generally that Miller's conduct was 'malicious and improper,' . . . Plaintiff concedes that Miller's allegedly improper conduct was undertaken 'for the benefit of himself and EHL,' rather than for the purpose, let alone the sole purpose, of inflicting intentional harm on Plaintiff. Accordingly, Plaintiff's own more specific allegations as to Defendant's business motives belie its more general statement of Defendant's maliciousness"); *see also Rotenberg v. Town of Mamaroneck*, 2010 WL 3468051, at *4 (S.D.N.Y. Aug. 24, 2010) ("plaintiffs fail to make any specific factual allegations as to defendants' interference with the relationship with [third party] . . . nor is it plausible that defendants "sole" motive was to harm this relationship. Accordingly, plaintiff's "interference" claim, however construed, must be dismissed"); *Meadow Ridge*

13

*Capital, LLC v. Levi*, 29 Misc. 3d 1224(A) (N.Y. Sup. Ct. 2010) ("The Complaint alleges that Levi's actions were motivated by economic considerations and self-interest.  Even if true, this is clearly not conduct 'motivated solely by malice' and Plaintiff's mere use of the term "malice" does not render the Complaint sufficient in this regard"); *Foxtons, Inc. v. Cirri Germain Realty*, No. L-1421-06 2008 WL 465653, at *7 (N.J. App. Div. Feb. 22, 2008) (where defendant has a legitimate business reason for its actions or "acted to advance its own interest and financial position," malice will not be found).

Notably, the complaint does not even mention "malice."  MSI simply argues Merrick's conduct was unjustified because it had no right to demand that MSI bear responsibility for the CSSI losses. Compl. ¶ 71.  MSI's contention that Merrick's interpretation of the ISO Agreement was incorrect, while possibly sufficient to assert a breach of contract claim, patently fails to identify conduct that was malicous, *i.e,* conduct that is "transgressive of generally accepted standards of common morality or of law" or is "fraudulent, dishonest, or illegal*."* *Lamorte Burns & Co., Inc.*, 167 N.J. at 306-307.

Because MSI's tortious interference claim is based on nothing more than allegations that Merrick sought to maximize and protect its economic interest by ensuring that it was made whole prior to letting MSI out of its contract a year early, the Complaint fails to alleges the necessary malice required to state a claim for tortious interference with prospective economic relations.  Thus, this claim must be dismissed.

### C.    The Complaint Sets Forth No Basis for Its Claim Against Merrick's Corporate Parent

Notably, throughout the Complaint, the conduct complained of by MSI relates solely to the actions *of Merrick* arising out of MSI contractual relationship *with Merrick* under the ISO Agreement.  MSI's allegations have nothing to do with Merrick's parent corporation, CardWorks.  Hoping to drag another party into this contract dispute, MSI throws in an allegation, based upon "information and belief," that Merrick's representative, Fred Horn, was "acting at the direction of the leadership of not only of Merrick but defendant CardWorks." Compl. ¶ 72.

14

But this bald allegation is simply not sufficient to state a claim to relief against CardWorks that is "plausible on its face.'" *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974.  The only "fact" in support of Plaintiff's conclusory allegation that Horn was acting at the direction of CardWorks is the fact that Horn purportedly advised MSI that "discussions concerning MSI's response to the $7.2 million extortionate demand would have be reviewed with his '5 chiefs,' which, upon information and belief, included Berman [CardWorks CEO]."  Compl. ¶ 72.  Thus, MSI asserts a tortious interference claim against CardWorks simply based on the fact that the "chiefs" that Horn had to consult on corporate decisions purportedly included a representative of Merrick's parent corporation.  But of course, there is nothing improper, much less tortious, about representatives of Merrick's parent corporation weighing in on corporate decisions.  Indeed, a corporate parent is privileged to do so. *See Boulevard Assocs. v. Sovereign Hotels, Inc.*, 72 F.3d 1029, 1036 (2d Cir. 1995) ("Courts in other states have uniformly found that a parent company does not engage in tortious conduct when it directs its wholly-owned subsidiary to breach a contract that is no longer in the subsidiary's economic interest to perform"); *Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670, 672 (3d Cir. 1991) ("a parent corporation is privileged in disrupting prospective contractual negotiations of its subsidiary with another party"); *Romano v. MTI/The Image Group, Inc.*, 2003 WL 22203735, n. 5 (S.D.N.Y. Sept. 22, 2003).  Simply directing your subsidiary to maximize its rights under a contract – which is all that the Complaint alleges – does not state a tortious interference claim.

Under any circumstances, to the extent that the alleged discussions amongst Merrick and its "five chiefs" actually occurred, they are not sufficient to make out a "plausible" claim that CardWorks itself tortiously interfered with MSI's prospective economic advantage.  MSI's conclusory assertion, on "information and belief," that CardWorks was directing Merrick to tortiously interfere necessarily fails because MSI's mere "suspicions cannot suffice to support a claim for tortious interference." *4 Hour Wireless v. Smith*, 2002 WL 31654963, *2 (S.D.N.Y. Nov. 22, 2002); *see also 150 E. 58th St. Partners, L.P. v. Wilkhahn Wilkening & Hahn GmbH & Co.*, 1998 WL 65992, *2 (S.D.N.Y. Feb. 17, 1998) (allegation that affiliate "actively induced and

persuaded" co-defendant and that they "conspired together" failed to state tortious interference claim because "[p]laintiff provides no factual underpinnings for these bare allegations, nor does it state the basis of its 'information and belief' about Steelcase's alleged tortious interference").

MSI essentially seeks to assert alter ego liability against CardWorks, seeking to hold it separately responsible for Merrick's actions based on its purported direction of Merrick. But MSI does not – because it cannot – allege any allegations sufficient to meet the high standard necessary to establish alter ego liability.  *See Rochester Gas & Elec. Corp.*, 355 F. App'x 547, 549-50 (2d Cir. 2009) ("In New York, a court may disregard the corporate form if (1) the parent corporation so dominates the subsidiary as to render it 'a mere instrumentality of the parent,' (2) the parent uses its control 'to commit fraud or other wrong,' and (3) 'the fraud or wrong results in an unjust loss or injury to plaintiff.'").

Thus, even were the court to conclude MSI had adequately stated a claim for tortious interference against Merrick, the claim should nevertheless be dismissed as against CardWorks.

## CONCLUSION

For the reasons set forth herein, MSI's Second, Third, Fifth and Seventh Claims for Relief should be dismissed with prejudice.

Dated:   New York, New York
         December 3, 2010

                                   **SATTERLEE STEPHENS BURKE & BURKE LLP**

                                   By: _/s/ Daniel G. Gurfein_____
                                           Daniel G. Gurfein
                                           Mario Aieta
                                           James Regan
                                   230 Park Avenue
                                   New York, New York  10169
                                   Telephone:  (212) 818-9200
                                   Facsimile:  (212) 818-9606
                                   *Attorneys for Defendants Merrick Bank Corporation and CardWorks Inc.*

16